**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                        :

| | | |
|---|---|---|
| *In re:* | : | Chapter 15 |
| | : | |
| THE CONTAINERSHIP COMPANY | : | Case No. 11-12622-JLG |
| (TCC) A/S, | : | |
| | : | |
|     *Debtor in a Foreign Proceeding.* | : | |
| | : | |

-------------------------------------------------------x
                        :

| | | |
|---|---|---|
| THE CONTAINERSHIP COMPANY | : | Adv. Proc. No. 11-02441-JLG |
| (TCC) A/S, acting by and through Jørgen | : | |
| Hauschildt, solely in his capacity as Foreign | : | |
| Representative thereof, | : | |
| | : | |
|     *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| US PACIFIC TRANSPORT, INC. (CASA), | : | |
| | : | |
|     *Defendant.* | : | |

-------------------------------------------------------x
                        :

| | | |
|---|---|---|
| THE CONTAINERSHIP COMPANY | : | Adv. Proc. No. 11-02444-JLG |
| (TCC) A/S, acting by and through Jørgen | : | |
| Hauschildt, solely in his capacity as Foreign | : | |
| Representative thereof, | : | |
| | : | |
|     *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| O.E.C. SHIPPING LOS ANGELES, INC., | : | |
| | : | |
|     *Defendant.* | : | |

-------------------------------------------------------x

```
------------------------------------------------------x
                                                      :
THE CONTAINERSHIP COMPANY               :        Adv. Proc. No. 11-02446-JLG
(TCC) A/S, acting by and through Jørgen  :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                       :
                                              :
          Plaintiff,                          :
                                              :
v.                                            :
                                              :
TRANSLINK SHIPPING, INC.,                     :
                                              :
          Defendant.                          :
------------------------------------------------------x
                                              :
THE CONTAINERSHIP COMPANY               :        Adv. Proc. No. 11-02447-JLG
(TCC) A/S, acting by and through Jørgen  :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                       :
                                              :
          Plaintiff,                          :
                                              :
v.                                            :
                                              :
APEX MARITIME, CO., INC.,                     :
                                              :
          Defendant.                          :
------------------------------------------------------x
                                              :
THE CONTAINERSHIP COMPANY               :        Adv. Proc. No. 11-02448-JLG
(TCC) A/S, acting by and through Jørgen  :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                       :
                                              :
          Plaintiff,                          :
                                              :
v.                                            :
                                              :
ARGOS FREIGHT, INC.,                          :
d/b/a Agility Fragility, Inc.,                :
                                              :
          Defendant.                          :
------------------------------------------------------x
```

-----------------------------------------------------x
                                                     :
THE CONTAINERSHIP COMPANY              :       Adv. Proc. No. 11-02450-JLG
(TCC) A/S, acting by and through Jørgen   :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                               :
                                                     :
          *Plaintiff,*                               :
                                                     :
v.                                                   :
                                                     :
TOPOCEAN,                                            :
                                                     :
          *Defendant.*                               :
-----------------------------------------------------x
                                                     :
THE CONTAINERSHIP COMPANY              :       Adv. Proc. No. 11-02451-JLG
(TCC) A/S, acting by and through Jørgen   :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                               :
                                                     :
          *Plaintiff,*                               :
                                                     :
v.                                                   :
                                                     :
PUDONG TRANS USA, INC.,                 :
                                                     :
          *Defendant.*                               :
-----------------------------------------------------x
                                                     :
THE CONTAINERSHIP COMPANY              :       Adv. Proc. No. 11-02452-JLG
(TCC) A/S, acting by and through Jørgen   :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                               :
                                                     :
          *Plaintiff,*                               :
                                                     :
v.                                                   :
                                                     :
U.S. UNITED LOGISTICS (NINGBO)         :
INC.,                                                :
                                                     :
          *Defendant.*                               :
-----------------------------------------------------x

---------------------------------------------------x
                                                   :
THE CONTAINERSHIP COMPANY            :        Adv. Proc. No. 11-02453-JLG
(TCC) A/S, acting by and through Jørgen       :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                        :
                                               :
        *Plaintiff,*                           :
                                               :
v.                                             :
                                               :
UNIVERSAL SHIPPING, INC. (USI),    :
                                               :
        *Defendant.*                           :
---------------------------------------------------x
                                               :
THE CONTAINERSHIP COMPANY            :        Adv. Proc. No. 11-02457-JLG
(TCC) A/S, acting by and through Jørgen       :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                        :
                                               :
        *Plaintiff,*                           :
                                               :
v.                                             :
                                               :
UNION LOGISTICS, INC.,             :
                                               :
        *Defendant.*                           :
---------------------------------------------------x
                                               :
THE CONTAINERSHIP COMPANY            :        Adv. Proc. No. 11-02459-JLG
(TCC) A/S, acting by and through Jørgen       :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                        :
                                               :
        *Plaintiff,*                           :
                                               :
v.                                             :
                                               :
ON TIME SHIPPING LINE LIMITED,     :
                                               :
        *Defendant.*                           :
---------------------------------------------------x

---------------------------------------------------x
                :

THE CONTAINERSHIP COMPANY    :     Adv. Proc. No. 11-02461-JLG
(TCC) A/S, acting by and through Jørgen  :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,           :
                :
    *Plaintiff,*        :
                :
v.                :
                :
T-Z CARGO LIMITED,      :
                :
    *Defendant.*      :
---------------------------------------------------x
                :

THE CONTAINERSHIP COMPANY    :     Adv. Proc. No. 11-02462-JLG
(TCC) A/S, acting by and through Jørgen  :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,           :
                :
    *Plaintiff,*        :
                :
v.                :
                :
MULTI-TRANS SHIPPING AGENCY,  :
INC.,               :
                :
    *Defendant.*      :
---------------------------------------------------x
                :

THE CONTAINERSHIP COMPANY    :     Adv. Proc. No. 11-02463-JLG
(TCC) A/S, acting by and through Jørgen  :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,           :
                :
    *Plaintiff,*        :
                :
v.                :
                :
TT OCEAN LOGISTICS, LLC,    :
                :
    *Defendant.*      :
---------------------------------------------------x

```
-----------------------------------------------------x
                                                     :
THE CONTAINERSHIP COMPANY              :      Adv. Proc. No. 11-02464-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                 :
                                        :
          Plaintiff,                    :
                                        :
v.                                      :
                                        :
CEVA FREIGHT LLC,                       :
d/b/a CEVA Ocean Line,                  :
                                        :
          Defendant.                    :
-----------------------------------------------------x
                                        :
THE CONTAINERSHIP COMPANY              :      Adv. Proc. No. 11-02465-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                 :
                                        :
          Plaintiff,                    :
                                        :
v.                                      :
                                        :
INTERGLOBO NORTH AMERICA INC.,          :
                                        :
          Defendant.                    :
-----------------------------------------------------x
                                        :
THE CONTAINERSHIP COMPANY              :      Adv. Proc. No. 11-02466-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                 :
                                        :
          Plaintiff,                    :
                                        :
v.                                      :
                                        :
LCL LINES,                              :
                                        :
          Defendant.                    :
-----------------------------------------------------x
```

```
--------------------------------------------------x
                                                  :
THE CONTAINERSHIP COMPANY                          :    Adv. Proc. No. 11-02467-JLG
(TCC) A/S, acting by and through Jørgen            :
Hauschildt, solely in his capacity as Foreign     :
Representative thereof,                            :
                                                  :
        Plaintiff,                                 :
                                                  :
v.                                                 :
                                                  :
BARTHCO INTERNATIONAL, INC.,                       :
d/b/a OHL-Int'l ,                                  :
                                                  :
        Defendant.                                 :
--------------------------------------------------x
                                                  :
THE CONTAINERSHIP COMPANY                          :    Adv. Proc. No. 11-02468-JLG
(TCC) A/S, acting by and through Jørgen            :
Hauschildt, solely in his capacity as Foreign     :
Representative thereof,                            :
                                                  :
        Plaintiff,                                 :
                                                  :
v.                                                 :
                                                  :
WAKO EXPRESS (HK) CO. LTD.,                        :
                                                  :
        Defendant.                                 :
--------------------------------------------------x
                                                  :
THE CONTAINERSHIP COMPANY                          :    Adv. Proc. No. 11-02469-JLG
(TCC) A/S, acting by and through Jørgen            :
Hauschildt, solely in his capacity as Foreign     :
Representative thereof,                            :
                                                  :
        Plaintiff,                                 :
                                                  :
v.                                                 :
                                                  :
GLOBAL FORWARDING LTD.,                            :
                                                  :
        Defendant.                                 :
--------------------------------------------------x
```

-------------------------------------------------------x

THE CONTAINERSHIP COMPANY :  Adv. Proc. No. 11-02472-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,
              :

   *Plaintiff,*       :

v.             :

HEADWIN GLOBAL LOGISTICS (USA), :
INC.,

   *Defendant.*      :
-------------------------------------------------------x
              :

THE CONTAINERSHIP COMPANY :  Adv. Proc. No. 11-02473-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,

   *Plaintiff,*       :

v.             :

PANTAINER LTD.,      :
d/b/a Pantainer Express

   *Defendant.*      :
-------------------------------------------------------x
              :

THE CONTAINERSHIP COMPANY :  Adv. Proc. No. 11-02475-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,

   *Plaintiff,*       :

v.             :

SINICWAY INTERNATIONAL  :
LOGISTICS LTD.,      :

   *Defendant.*      :
-------------------------------------------------------x

```
-----------------------------------------------x
                                               :
THE CONTAINERSHIP COMPANY              :       Adv. Proc. No. 11-02477-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign  :
Representative thereof,                  :
                                               :
            Plaintiff,                   :
                                               :
v.                                       :
                                               :
WINAIR LOGISTICS, INC.,                  :
d/b/a Airgoal Int'l USA,                 :
                                               :
            Defendant.                   :
-----------------------------------------------x
                                               :
THE CONTAINERSHIP COMPANY              :       Adv. Proc. No. 11-02478-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign  :
Representative thereof,                  :
                                               :
            Plaintiff,                   :
                                               :
v.                                       :
                                               :
ORIENT STAR TRANSPORT                    :
INT'L LTD.,                              :
                                               :
            Defendant.                   :
-----------------------------------------------x
                                               :
THE CONTAINERSHIP COMPANY              :       Adv. Proc. No. 11-02517-JLG
(TCC) A/S, acting by and through Jørgen :
Hauschildt, solely in his capacity as Foreign  :
Representative thereof,                  :
                                               :
            Plaintiff,                   :
                                               :
v.                                       :
                                               :
SEAPASSION LOGISTICS, INC.,              :
                                               :
            Defendant.                   :
-----------------------------------------------x
```

```
-------------------------------------------------------x
                                             :
THE CONTAINERSHIP COMPANY                    :    Adv. Proc. No. 11-02522-JLG
(TCC) A/S, acting by and through Jørgen      :
Hauschildt, solely in his capacity as Foreign :
Representative thereof,                       :
                                             :
         Plaintiff                           :
                                             :
v.                                           :
                                             :
STD LOGISTICS LTD.,                          :
                                             :
         Defendant.                          :
                                             :
-------------------------------------------------------x
```

### FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR
### REPORT AND RECOMMENDATION ON OMNIBUS
### <u>CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

<u>A P P E A R A N C E S</u> :

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
By:    Richard V. Singleton, II, Esq. (argued)
       Jeremy A. Herschaft, Esq.
       Michael P. Smith, Esq.

*Attorneys for Jørgen Hauschildt, in his capacity as the Foreign Representative for The Containership Company (TCC), A/S*

GONZALEZ DEL VALLE LAW
1250 Connecticut Avenue N.W.
Suite 200
Washington, D.C. 20036
By:    Henry P. Gonzalez, Esq. (argued)

*Attorneys for Defendants US Pacific Transport, Inc. (CASA) (No. 11-02441) and Translink Shipping, Inc. (No. 11-02446)*

GKG LAW, P.C.
1054 Thirty-First Street N.W.
Suite 200
Washington, D.C. 20007
By:    Edward D. Greenberg, Esq.
       David P. Street, Esq.
       Brendan Collins, Esq. (argued)

       -and-

THE LAW OFFICES OF SANDRA GALE BEHRLE
420 Lexington Avenue
Suite 300
New York, New York 10170
By:    Sandra Gale Behrle, Esq.

*Attorneys for Defendants O.E.C. Shipping Los Angeles, Inc. (No. 11-02444), Apex Maritime Co.,
Inc. (No. 11-02447), Argos Freight, Inc. (No. 11-02448), Topocean (No. 11-02450), U.S. United
Logistics (Ningbo), Inc. (No. 11-02452), Universal Shipping, Inc. (USI) (No. 11-02453), On
Time Shipping Line Limited (No. 11-02459), T-Z Cargo Limited (No. 11-02461), Multi-Trans
Shipping Agency, Inc. (No. 11-02462), TT Ocean Logistics LLC (No. 11-02463), CEVA Freight
LLC (No. 11-02464), Interglobo North America, Inc. (No. 11-02465), LCL Lines (No. 11-02466),
Barthco International, Inc. (No. 11-02467), Wako Express (HK) Co. Ltd. (No. 11-02468),
Global Forwarding Ltd. (No. 11-02469), Pantainer Ltd. (No. 11-02473), Winair Logistics, Inc.
(No. 11-02477), Orient Star Transport Int'l Ltd. (No. 11-02478), Seapassion Logistics, Inc. (No.
11-02517), and STD Logistics Ltd. (No. 11-02522)*

HUSCH BLACKWELL LLP
60 East 42nd Street
Suite 4600
New York, New York 10165
By:    Daniel P. Jaffe, Esq. (argued)

*Attorneys for Defendants Headwin Global Logistics (USA), Inc. (No. 11-02472) and Union
Logistics, Inc. (No. 11-02457) and Defendant-Intervenor Roanoke Trade Services, Inc. (Nos.
11-02451 and 11-02475)*

**JAMES L. GARRITY, JR.**
**UNITED STATES BANKRPTCY JUDGE:**

### *Introduction*

Prior to commencing its insolvency proceedings in Denmark, The Containership

Company (TCC), A/S (the "**Plaintiff**" or "**TCC**") operated a trans-Pacific maritime cargo

carrying service.  Each of the defendants in these adversary proceedings (the "**Defendants**")

entered into a Service Contract (defined below) with TCC in order to ship goods on TCC's

vessels between ports in the United States and China.  Among other things, each of the Service

Contracts specified a "minimum quantity commitment" ("**MQC**"), or the minimum amount of

goods that each Defendant committed to shipping on the Plaintiff's vessels – at reduced

rates – during the term of the Service Contracts.  In April 2011, TCC cancelled the remaining

four voyages under the Service Contracts.  At that time, a number of shippers had not satisfied

the MQC under their respective contracts.  The Plaintiff filed these adversary proceedings

against the shippers that failed to meet the MQCs under their Service Contracts, contending that

those shippers should be held liable to TCC for liquidated damages for failing to ship the

required amount of goods.  The Defendants deny liability and in response, have raised a number

of defenses, including claims that they were fraudulently induced to enter into the Service

Contracts; that the contracts are void and unenforceable for lack of consideration; and that their

performance under the contracts was excused by the existence of force majeure conditions,

TCC's own breaches of the Service Contracts, and TCC's voluntary cessation of its trans-Pacific

shipping service before the end of the Service Contracts' term.

Before the Court are omnibus cross motions for summary judgment applicable to each of

the above-captioned adversary proceedings.  For the reasons set forth below, the Court

1

recommends that the District Court find that the Service Contracts are not void for lack of

consideration, that the Defendants' performance was not excused by the force majeure

provisions of the contracts, and that the filing of these adversary proceedings by TCC did not

constitute a violation of the implied covenant of good faith and fair dealing under the contracts.

The Court further recommends that the District Court find that genuine issues of material fact

preclude summary judgment on the Defendants' claims that TCC fraudulently induced the

Defendants to enter into the Service Contracts or that TCC materially breached the contracts in

the conduct of its shipping service.  However, the Court agrees with the Defendants that, under

the plain language of the Service Contracts, TCC's voluntary termination of its trans-Pacific

service in April 2011 relieved the Defendants of their remaining MQC obligations.  Accordingly,

for that reason, the Court recommends that the Defendants' omnibus motion for summary

judgment in each of these adversary proceedings be **GRANTED**.  Correspondingly, the Court

recommends that the Plaintiff's omnibus motion for summary judgment be **DENIED**.[3]

### Jurisdiction

As an initial matter, this Court must determine the scope of its jurisdiction to resolve the

claims asserted in the complaints.  "The jurisdiction of the bankruptcy courts, like that of other

federal courts, is grounded in, and limited by, statute."  *Celotex Corp. v. Edwards*, 514 U.S. 300,

307 (1995).  Section 1334 of title 28 of the United States Code vests district courts with "original

and exclusive jurisdiction of all cases arising under title 11."  28 U.S.C. § 1334(a).  That section

also vests district courts with "original but not exclusive jurisdiction of all civil proceedings

---

[3]    In addition to the omnibus motions for summary judgment currently before the Court, 21 of the Defendants
have filed "individual" motions for summary judgment based on facts and issues specific to those Defendants.
Based upon the Court's recommendation as to the disposition of the omnibus motions, the Court recommends
that the individual motions be denied as moot.

arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b).  District

courts may "refer" any or all of these proceedings "to the bankruptcy judges for the district." *Id.*

§ 157(a).  The United States District Court for the Southern District of New York has done so.

*See* Amended Standing Order of Reference, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31,

2012) (Preska, C.J.).

Once a proceeding has been referred, "[t]he manner in which a bankruptcy judge may

act . . . depends on the type of proceeding involved."  *Stern v. Marshall*, 564 U.S. 462, 473

(2011).  In core proceedings[4] that arise under title 11 or arise in cases under title 11, bankruptcy

courts may "hear and determine" the matter and may "enter appropriate orders and judgments."

28 U.S.C. § 157(b)(1).  By contrast, in noncore proceedings that are merely "related to" a case

under title 11, bankruptcy courts must normally "submit proposed findings of fact and

conclusions of law to the district court."  *Id.* § 157(c)(1).  In those matters, "any final order or

judgment shall be entered by the district judge after considering the bankruptcy judge's proposed

findings and conclusions and after reviewing de novo those matters to which any party has

timely and specifically objected."  *Id.*  However, even in noncore matters, a bankruptcy court

may enter final orders and judgments with the consent of all parties involved.  *See id.*

§ 157(c)(2); *see also Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assocs., LLC)*,

474 B.R. 430, 436 (S.D.N.Y. 2012) ("[A] bankruptcy court may finally adjudicate even noncore

---

[4]    "To satisfy constitutional limitations on the subject matter jurisdiction of the Article I bankruptcy courts,
bankruptcy jurisdiction is divided into 'core' and 'noncore' jurisdiction."  *In re Fairfield Sentry Ltd. Litig.*, 458
B.R. 665, 674 (S.D.N.Y. 2011).  Core jurisdiction encompasses proceedings which "invoke a substantive right
provided by title 11" or that "would have no existence outside of the bankruptcy case." *J.T. Moran Fin. Corp.
v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 937 (S.D.N.Y. 1991).  Noncore or
"related to" jurisdiction encompasses proceedings that are not core proceedings but nevertheless "might have a
'conceivable effect' on the bankrupt estate."  *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip.
Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992).

claims with the parties' consent.").  Here, the claims asserted in the complaint do not implicate

the Court's core jurisdiction.  It is well settled that a "breach-of-contract action by a debtor

against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is

non-core."  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.

3d 1095, 1102 (2d Cir. 1993).  The Defendants have not consented to this Court finally

adjudicating these matters.  Accordingly, the Court lacks the authority to enter final orders and

judgments with respect to the adversary proceedings.  Instead, pursuant to § 157(c)(1) and

Bankruptcy Rule 9033, the Court submits the following proposed findings of fact and

conclusions of law to the District Court for its entry of a final order or judgment.

## *Background*

### A.    *Factual and Procedural Background*

On May 31, 2011, Jørgen Hauschildt ("**Hauschildt**"), in his capacity as TCC's court-

appointed reconstructor, filed a petition in this Court on behalf of TCC under chapter 15 of the

Bankruptcy Code seeking recognition of TCC's insolvency proceeding pending before the

Bankruptcy Division of the Commercial and Maritime Court in Copenhagen, Denmark (the

"**Danish Insolvency Proceeding**") as a foreign main proceeding.  *See Verified Petition Under*

*Chapter 15 for Recognition of a Foreign Main Proceeding and Granting Related Relief* [ECF

No. 1].[5]  On July 1, 2011, this Court (Lane, J.[6]) entered an *Order Granting Recognition and*

*Relief in Aid of a Foreign Main Proceeding Pursuant to §§ 1517, 1520, and 1521* [ECF No. 24]

---

[5]    Except where otherwise noted, references to "ECF" refer to the electronic docket maintained in TCC's chapter
15 case pending in this Court, No. 11-12622 (JLG).

[6]    TCC's chapter 15 case and these adversary proceedings were originally assigned to the Honorable Sean Lane of
this Court.  Each of the above-captioned adversary proceedings was reassigned to the undersigned on February
18, 2015.  TCC's chapter 15 case was reassigned to the undersigned on March 19, 2015.

4

(the "**Recognition Order**") recognizing TCC's Danish Insolvency Proceeding as a foreign main

proceeding.

After the Recognition Order was entered, between August 1, 2011 and August 12, 2011,

Hauschildt filed in this Court, on behalf of TCC, a total of 76 complaints (the "**Complaints**")

against various shippers, each initiating an adversary proceeding (the "**Adversary**

**Proceedings**").[7] Each of the Complaints asserts a single count against a single Defendant – in

each case, a claim for breach of a Service Contract against a shipper that allegedly failed to meet

its MQC under that contract.  By the Complaints, the Plaintiff seeks to recover liquidated

damages from the Defendants calculated based on the amount of the MQC shortfall for each

Defendant.

As alleged in the Complaints and set forth in the summary judgment record, TCC's

business model was to operate a maritime cargo container shipping business between ports in the

United States and China.  *See The Containership Company (TCC) A/S Restructuring Plan*, CVR

No. 32561543 (the "**Restructuring Plan**")[8] § 1.1.  To that end, TCC chartered several vessels

and entered into approximately 110 service contracts (the "**Service Contracts**")[9] with various

---

[7]    As of the date of this report and recommendation, a total of 49 of the Adversary Proceedings have been resolved
       and closed, leaving only the 27 above-captioned Adversary Proceedings to be resolved.

[8]    A copy of the Restructuring Plan from the Danish Insolvency Proceeding is attached to the Defendants'
       Omnibus Motion (defined below) as Exhibit 7.

[9]    A "service contract" is defined as:

        [A] written contract, other than a bill of lading or receipt, between one or more shippers, on the one hand,
        and an individual ocean common carrier or an agreement between or among ocean common carriers, on the
        other, in which . . . (A) the shipper or shippers commit to providing a certain volume or portion of cargo
        over a fixed time period; and (B) the ocean common carrier or the agreement commits to a certain rate or
        rate schedule and a defined service level, such as assured space, transit time, port rotation, or similar
        service features.

    46 U.S.C. § 40102(20).

5

shippers in 2010 and 2011, most of which were scheduled to expire on April 30, 2011. *See id.*;

*see also Plaintiff's Statement of Undisputed Material Facts* [ECF No. 255-4] ("**Plaintiff's Fact**

**Statement**") ¶¶ 10-11; *Defendants' Omnibus Statement of Undisputed Material Facts* [ECF No.

259-2 ("**Defendants' Fact Statement**") ¶ 4.

Copies of the relevant Service Contracts are not attached to the Complaints.  However, a

sample Service Contract between TCC and Defendant Apex Maritime Co., Inc. (the "**Apex**

**Service Contract**") is attached to the *Declaration of Richard V. Singleton, II, in Support of*

*Debtor/Plaintiff TCC's Motion for Partial Summary Judgment on Liability* [ECF No. 255-5] (the

"**Singleton Declaration**") as Exhibit 4.[10]  In the Service Contracts, TCC is designated as the

"carrier" while the Defendant is designated as the "shipper."  *See* Apex Serv. Contract at 1.

Term 4 of each Service Contract sets forth the shipper's MQC during the contract term.  For

example, Term 4 of the Apex Service Contract states:

> The Shipper agrees to tender for shipment on vessels of the Carrier during the
> term of this contract a MINIMUM of 10,000 TEUs.[11]  Volume in excess of the
> minimum will be subject to the Carrier's approval at time of booking.  TEUs are
> calculated as follows: one 20' container equals 1 TEU; one 40' container equals 2
> TEU; and one 40' HC container equals 2.25 TEU.

*Id.* at Term 4.  If a shipper fails to meet its MQC during the contract term, Term 7 of the Service

Contract requires the shipper to pay liquidated damages to TCC.  For example, Term 7 of the

Apex Service Contract states:

> If the Shipper fails to meet the requirements set forth in Term 4 of this contract,
> the Carrier shall invoice the Shipper and the Shipper agrees to pay liquidated

---

[10]  Aside from certain information specific to each Defendant such as its name, address, unique identification
number, and minimum quantity commitment, the terms of each Service Contract are identical.  Accordingly,
where it is necessary to refer to the specific terms of a Service Contracts, the Court will refer to the terms of the
Apex Service Contract.

[11]  TEU is an abbreviation for "twenty-foot equivalent unit," a unit of measurement equal to the size of a standard
20-foot maritime shipping container.

> damages on the difference between the quantity of cargo actually shipped and the
> minimum quantity commitment. The total amounts due hereunder shall be paid
> directly to the Carrier within thirty (30) days following written notice from the
> Carrier. Liquidated damages for any shortfall as per this term shall be stated in
> Appendix A.

*Id.* at Term 7. Appendix A to each Service Contract states that the liquidated damages shall be

equal to $250 for each TEU of default. *See id.* at App'x A.

Term 20 of each Service Contract permitted either party to terminate the contract on 30

days' notice. For example, Term 20 of the Apex Service Contract states:

> Except as otherwise provided, this contract may be terminated by either party
> without penalty or further obligation to the other party under this contract on
> thirty (30) days' notice to the other party, provided however, that if the Shipper
> terminates the contract before the end of the contract period having not tendered
> the minimum quantity, it shall be liable to pay all liquidated damages provided for
> in Term 7.

*Id.* at Term 20. As opposed to termination, Term 5 of each Service Contract contemplates that

TCC's shipping service could be "modified" or "restructured." To the extent that the service was

modified or restructured pursuant to Term 5, the Service Contracts provided for a proportionate

reduction in the shipper's MQC. For example, Term 5 of the Apex Service Contract states, in

pertinent part:

> In the event that Carrier has modified or restructured the service provided, within
> the terms of this agreement, the Carrier shall notify the Shipper at least 15 days
> prior to the occurrence of such modification.

*    *    *

> [T]his agreement shall be maintained in force for the Origin(s) or Destination(s)
> not affected by the restructuring of the services, and the obligation of the Shipper
> volume commitment shall be reduced pro rata to the volume carried within the
> affected Origin or Destination.

*Id.* at Term 5.

7

TCC's first trans-Pacific voyage departed from Taicang, China bound for Los Angeles, California on April 17, 2010.  *See* Pl.'s Fact Stmt. ¶ 4.  However, according to the Defendants, TCC's service was plagued by problems from the beginning.  Even before the launch of its service in April 2010, the Defendants allege that TCC was informed by the Shanghai International Port Group ("**SIPG**") that SIPG objected to TCC shipping goods out of the port of Taicang, China rather than the nearby port of Shanghai.  *See* Defs.' Fact Stmt. ¶¶ 60-65.[12] Among other things, SIPG allegedly threatened to prevent TCC from gaining access to pilots and tugs and from working with agents in Taicang in order to disrupt TCC's business.  *See id.* ¶¶ 63-64.  SIPG also allegedly threatened to retaliate against any of TCC's customers that shipped out of Taicang by negatively impacting those shippers' "ability to smoothly do business in Shanghai."  *Id.* ¶ 79.  Because Shanghai is such a large and commercially important port compared to Taicang, the Defendants contend that they had no choice but to accede to SIPG's demands and refuse to ship goods with TCC pursuant to their Service Contracts in order to prevent their business out of Shanghai from being negatively impacted.  *See id.* ¶¶ 80-81, 86. The Defendants also contend that, despite TCC's knowledge of SIPG's threats against its customers, TCC concealed that information in order to fraudulently induce the Defendants to enter into the Service Contracts.  *See id.* ¶¶ 159-63.

After TCC began operations, the Defendants allege that it also faced a shortage of cargo containers necessary for shippers to ship their goods on its vessels.  *See id.* ¶¶ 170-74.  This shortage allegedly continued for several months, which resulted in TCC being forced to decline carriage of certain cargo tendered by its customers.  *See id.* ¶¶ 174-75.  TCC also allegedly faced

---

[12]    The Plaintiff disputes these allegations.

8

a shortage of "truck power" to transport containers between factories and terminals in Taicang, (*see* Defs.' Fact Stmt. ¶¶ 212-13), and encountered difficulties with its booking and equipment release procedures, (*see id.* ¶¶ 214-15).  The Defendants also contend that TCC's service was plagued with shipping delays, (*see id.* ¶¶ 236-72), and that TCC voluntarily cancelled certain of its scheduled voyages (*see id.* ¶¶ 223-33).

Between April 17, 2010 and April 1, 2011, TCC made a total of 91 voyages between China and the United States, consisting of 47 voyages from China to Los Angeles and 44 voyages from Los Angeles back to China.  *See* Pl.' Fact Stmt. ¶ 30.  Collectively, the Defendants shipped more than 15,000 containers over that time.  *See id.* ¶ 32.  However, on April 8, 2011, only a few weeks before the scheduled termination date for many of the Service Contracts (generally April 30, 2011), TCC voluntarily ended its trans-Pacific service and cancelled its four remaining scheduled sailings.  *See* Defs.' Fact Stmt. ¶¶ 24, 234.  At the time, TCC notified the Defendants that it was "[d]iscontinuing" its service.  Pl.'s Fact Stmt. ¶ 35.  However, TCC considered the Service Contracts to be "suspended," not terminated.  *See id.* ("TCC considered the Service Contracts to be suspended.").  Defendants contend, however, that TCC's discontinuation of its service constituted a termination under the Service Contracts.  *See* Defs.' Fact Stmt. ¶ 24 ("As of April 8, 2011, TCC terminated its services under the Service Contracts.").  As of the date that TCC ended its trans-Pacific service, a number of shippers – including the Defendants in these Adversary Proceedings – had yet to meet their MQCs under the Service Contracts.

On the same date it discontinued service, TCC filed a petition for reconstruction in the Bankruptcy Division of the Commercial and Maritime Court in Copenhagen, Denmark, commencing the Danish Insolvency Proceeding.  Four days later, TCC's corporate parent

9

withdrew all five vessels that had been chartered by TCC, leaving TCC with no ability to operate. *See* Defs.' Fact Stmt. ¶ 18. Thereafter, TCC terminated all of its employees. *See id.* ¶ 19.

In April and May 2011, TCC's Danish attorneys sent demand letters to each of the shippers that had failed to meet its MQC under the applicable Service Contract. *See* Pl.'s Fact Stmt. ¶ 38. In doing so, TCC credited such shippers with a *pro rata* reduction to their contractual MQC based upon the amount of cargo containers that such shippers "might have shipped on [TCC's] last four voyages" had they not been cancelled." *See id.* ¶ 39. Such a *pro rata* reduction was allegedly based upon Term 5 of the Service Contracts, which provides that, "as far as possible," the Defendants agreed to ship cargo "evenly throughout the duration" of the contracts. *See* Apex Serv. Contract, Term 5.

**B.** *The Omnibus Cross Motions for Summary Judgment*

As set forth above, TCC filed the Complaints commencing these Adversary Proceedings to recover liquidated damages on account of the alleged MQC shortfalls between August 1, 2011 and August 12, 2011. On June 20, 2014, the Plaintiff moved for partial summary judgment with respect to the Defendants' liability, supported by, *inter alia*, the *Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment on Liability Against Defendants* [ECF No. 255-1] (the "**Plaintiff's Memorandum**"), the Plaintiff's Fact Statement, and the Singleton Declaration (collectively, the "**Plaintiff's Omnibus Motion**").[13] On August 7, 2014, the Defendants opposed the Plaintiff's Omnibus Motion by filing the *Defendants' Opposition to*

---

[13]   To avoid filing the same documents in each of the Adversary Proceedings, the parties filed the papers in support of and in opposition to one another's omnibus motions in TCC's chapter 15 case, No. 11-12622 (JLG), rather than in each of the Adversary Proceedings. Thus, the Court's citations to these documents will be to the docket of TCC's chapter 15 case, not the Adversary Proceedings.

*TCC's Motion for Summary Judgment* [ECF No. 260] (the "**Defendants' Opposition**") together with the *Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts* [ECF No. 261] (the "**Defendants' Fact Response**").  On October 20, 2014, the Plaintiff filed the *Plaintiff's Omnibus Reply to Defendants' Opposition to TCC's Omnibus Motion for Summary Judgment* [ECF No. 267] (the "**Plaintiff's Reply**").

On August 7, 2014, the Defendants cross moved for summary judgment, supported by, *inter alia*, the *Defendants' Omnibus Memorandum of Law in Support of Motion for Summary Judgment* [ECF No. 259-1] (the "**Defendants' Memorandum**") and the Defendants' Fact Statement (collectively, the "**Defendants' Omnibus Motion**," together with the Plaintiff's Omnibus Motion, the "**Omnibus Motions**").  On October 20, 2014, the Plaintiff filed the *Plaintiff's Memorandum of Law in Opposition to Defendants' Omnibus Motion for Summary Judgment* [ECF No. 265] (the "**Plaintiff's Opposition**") together with the *Plaintiff's Omnibus Response to Defendants' Omnibus Statement of Undisputed Material Facts* [ECF No. 266] (the "**Plaintiff's Fact Response**").  On December 19, 2014, the Defendants filed the *Defendants' Reply in Support of Motion for Summary Judgment* [ECF No. 272] (the "**Defendants' Reply**").[14]

As set forth in the papers in support of and in opposition to the Omnibus Motions, the Plaintiff contends that these Adversary Proceedings "arise out of a series of garden variety maritime service contracts," (Pl.'s Mem. at 1), and present straightforward issues of contract interpretation.  *See* Pl.'s Surreply at 3 ("At its core, this entire dispute is simple and

---

[14]  In addition to filing the Defendants' Reply, the Defendants also filed on December 19, 2014 a *Reply in Support of Defendants' Omnibus Statement of Undisputed Material Facts and Defendants' Supplemental Omnibus Statement of Undisputed Material Facts* [ECF No. 273] (the "**Defendants' Fact Reply**").  After a hearing on June 9, 2015, the Court permitted the Plaintiff to respond to the Defendants' Fact Reply, which the Plaintiff did so on July 13, 2015 by filing the *Plaintiff's Omnibus Surreply to Defendants' Reply in Support of Defendants' Omnibus Statement of Undisputed Material Facts and Defendants' Supplemental Omnibus Statement of Undisputed Material Facts* [ECF No. 284] (the "**Plaintiff's Surreply**").

straightforward: the [D]efendants . . . entered into standard Service Contracts with TCC to ship a minimum volume of cargo on TCC's vessels and, after reaping the benefits of lower freight rates based on agreed MQC commitments, [D]efendants later breached the Service Contracts by refusing to pay contractually agreed liquidated damages for their failure to ship the promised MQC.").  According to the Defendants, however, the Plaintiff's contractual claims fail for a variety of reasons.  *First*, the Defendants argue that they were fraudulently induced to enter into the Service Contracts when TCC failed to disclose material facts concerning SIPG's threats against any shippers that agreed to use TCC's services. *See* Defs.' Mem. at 25-29.  *Second*, the Defendants argue that the Service Contracts are unenforceable or that their performance under the contracts was excused for a variety of reasons, including lack of consideration, TCC's own breaches of the Service Contracts and the termination of its trans-Pacific service in April 2011, and the force majeure conditions created by SIPG's conduct.  *See id.* at 8-25, 29-30.  *Third* and finally, the Defendants contend that the Plaintiff's attempt to recover "deadfreight" claims – the Defendants' shortfall under their MQCs – violates the implied covenant of good faith and fair dealing applicable to the Service Contracts.  *See id.* at 30-36.

***Discussion***

## I.   *Legal Standards*

### a.   *Summary Judgment*

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law" and a factual dispute is genuine if "the evidence is such that a reasonable jury

12

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Id.* at 256. In determining whether that burden has been met, "the court is required to resolve all ambiguities, and to credit all factual inferences that could rationally be drawn, in favor of the party against whom summary judgment in sought." *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000). "[I]f there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Id.* Where both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

**b.** *Applicable Law*

The parties agree that the Service Contracts are maritime contracts because the primary objective of the contracts was the transportation of goods by sea. *See Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 24 (2004) (finding contracts to be maritime contracts "because their primary objective is to accomplish the transportation of goods by sea"); *see also Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 49 (2d Cir. 2008) (contracts are maritime contracts where they were "entered into in connection with [a] maritime commercial venture" (citation and internal quotation marks omitted). "[S]o long as a [contract] requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce – and thus it is a maritime contract." *Norfolk S. Ry.*, 543 U.S. at 27.

13

"Federal law controls the interpretation of maritime contracts so long as the dispute is not 'inherently local.'" *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 110 (2d Cir. 2009) (quoting *Norfolk S. Ry.*, 543 U.S. at 23). State law should be used to "supplement any area of contract law for which federal common law does not provide." *Williamson*, 542 F.3d at 49 (citation omitted). As each of the Service Contracts contains a choice-of-law provision making New York law applicable to disputes concerning the contracts, (*see, e.g.*, Apex Serv. Contract, Term 21 ("This contract shall be subject to the U.S. Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998 (OSRA) and shall otherwise be construed and governed by the laws of the state of New York without regard to conflict of law provisions.")), this Court recommends that the District Court apply federal common law supplemented by New York law where appropriate. *See Hovensa LLC v. Kristensons-Petroleum, Inc.*, No. 12-CIV-5706, 2013 WL 1803694, at *3-6 (S.D.N.Y. Apr. 26, 2013) (applying both federal and New York law to a maritime contract containing a New York choice-of-law provision).

As set forth above, each of the Complaints asserts a single claim for breach of contract based on the respective Defendant's failure to meet its MQCs under the Service Contract. Claims for breach of contract require proof of four elements: "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *see also Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (2d Dep't 2013) ("The essential elements for pleading a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."). Maritime contracts are construed "like any other contracts: by their terms and consistent with the intent of the parties." *Norfolk S. Ry.*, 543 U.S. at

14

31. "Under both federal common law and New York law, a court must interpret a contract by considering all of its provisions, and words and phrases should be given their plain meaning." *Hovensa*, 2013 WL 1803694, at *4.

## II.    *Analysis*

### a.    *The District Court Should Find that the Service Contracts are Valid and Enforceable*

"The well-accepted rule is that a valid contract requires proof of an offer, acceptance, consideration, mutual assent, and intent to be bound." *Great Am. Ins. Co. v. USF Holland Inc.*, 937 F. Supp. 2d 376, 388 (S.D.N.Y. 2013) (citing *Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250, 255 (S.D.N.Y. 1995)).  In addition, pursuant to 46 U.S.C. § 40502(c), every valid service contract must contain certain "essential terms," including: (1) the origin and destination port ranges, (2) the origin and destination geographic areas in the case of through intermodal movements, (3) the commodities involved, (4) the minimum volume or portion, (5) the line-haul rate, (6) the duration, (7) service commitments, and (8) liquidated damages for nonperformance, if any.  *See* 46 U.S.C. § 40502(c).

Here, the Defendants do not contend that the Service Contracts lack any of the essential terms.  Rather, they attack the Service Contracts as "illusory" – in other words, "a promise in form, but in actuality not promising anything."  *Damato v. Time Warner Cable, Inc.*, No. 13-CV-994, 2013 WL 3968765, at *6 n.6 (E.D.N.Y. July 31, 2013) (quoting 3 Richard A. Lord, *Williston on Contracts* § 7:7 (4th ed. 2013) (internal quotation marks omitted)).  An illusory contract is not merely voidable; it is void for lack of consideration.  *See id.* (citation omitted); *see also Curtis Props. Corp. v. Greif Cos.*, 628 N.Y.S.2d 628, 632 (1st Dep't 1995) ("Because the promises of both parties to a bilateral contract must be supported by consideration, the contract is

15

unenforceable if the promise of either party is illusory.") (citation omitted). According to the

Defendants:

> TCC committed to nothing in executing the [Service Contracts].  While on the one hand TCC purports that it will make space available to transport a specified amount of cargo, it vitiates that commitment by stating that a shipper's exclusive remedy in the event of a breach of the carrier's commitment is a reduction in the shipper's minimum cargo commitment.  This is [the] prototype of an illusory contract, in which TCC only promises to perform if it chooses[.]  TCC would have incurred no liability if it had sold all its vessels as soon as it signed the contracts, had failed to purchase or charter any vessels at all or had accepted higher paying cargo in lieu of Defendants' shipments.  That is just the type of contract, lacking mutuality of obligation that the New York and federal courts have refused to enforce.

Defs.' Mem. at 22 (citations, alterations, and internal quotation marks omitted).

This is not so.  In executing the Service Contracts, TCC agreed that it would transport the

Defendants' cargo at lower rates than its published tariffs in exchange for the Defendants'

commitment to ship a minimum volume of goods.  This is the *quid pro quo* of a service contract,

since otherwise a carrier must charge its published tariff rates.  *See* 46 U.S.C. § 41104; *see also,*

*P & O Containers Ltd. v. Am. Motorists Ins. Co.*, No. 96-CIV-8244, 1998 WL 146229, at *3

(S.D.N.Y. Mar. 25, 1998) ("In return for offering favorable shipping rates, the carrier receives a

guarantee that a certain quantity of cargo will be tendered."); *Asia N. Am. Eastbound Rate Agmt.*

*v. Pacific Champion Serv. Corp.*, 864 F. Supp. 195, 201 n.11 (D.D.C. 1994) (noting that

minimum quantity commitments are the "*quid pro quo* for departing from the published tariff

rates of the carrier that would otherwise apply").

This type of agreement – an agreed-upon rate in exchange for a guaranteed minimum

volume – is adequate consideration to support the Service Contracts.  *See P & O Containers*,

1998 WL 146229, at *3; *Asia N. Am. Eastbound Rate Agmt.*, 864 F. Supp. at 201 n.11.  The

Service Contracts are not unenforceable for lack of consideration merely because the Plaintiff

retained discretion to "roll" the Defendants' cargo to a later voyage if an earlier one was

overbooked.  *See Lebowitz v. Dow Jones & Co.*, 508 Fed. App'x 83, 84 (2d Cir. 2013) ("Under

New York law, a contract is not illusory merely because its terms give discretion to one party to

the contract . . . , as every contract encompasses the implied duty of good faith and fair dealing."

(citation omitted)); *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (covenant of good faith

and fair dealing obliges contracting party to exercise its discretion "reasonably and with proper

motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations

of the parties") (citation, alterations, and internal quotation marks omitted).  This is especially

true where, as here, the written agreement evidences the parties' intent to be bound by its terms.

*See Curtis Props.*, 628 N.Y.S.2d at 632 ("The courts avoid an interpretation that renders a

contract illusory . . . and prefer to enforce a bargain where the parties have demonstrated an

intent to be contractually bound.").

        As a result, this Court recommends that the District Court find that the Service Contracts

are valid and enforceable and are not void for lack of consideration.

### b.    *The District Court Should Find that the Defendants' Performance Was Not Excused by the Force Majeure Provisions of the Service Contracts*

        The Defendants next contend that SIPG's threats against them constituted a force majeure

condition that excused their performance under the Service Contracts.  "[A] force majeure clause

in a contract excuses nonperformance when circumstances beyond the control of the parties

prevent performance."  *Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576, 580 (2d Cir. 1993);

*see also PT Kaltim Prima Coal v. AES Barbers Point, Inc.*, 108 F. Supp. 2d 475, 482 (S.D.N.Y.

2001) ("A declaration of force majeure relieves both [parties] of their contractual obligations.").

In New York, force majeure clauses are "narrowly construed."  *Reade v. Stoneybrook*

*Realty, LLC*, 882 N.Y.S.2d 8, 9 (1st Dep't 2009).  "[O]nly if the force majeure clause

17

specifically includes the event that actually prevents a party's performance will that party be

excused." *Kel Kim Corp. v. Central Mkts., Inc.*, 70 N.Y.2d 900, 902-03 (1987).  In addition,

where a contract requires one party to give the other notice of the existence of force majeure

conditions, such notice must be given for a party to be excused from its contractual obligations.

*See Vitol S.A., Inc. v. Koch Petroleum Grp., LP*, No. 01-CV-2184, 2005 WL 2105592, at *11

(S.D.N.Y. Aug. 31, 2005) ("[T]he force majeure defense fails because defendant did not provide

plaintiff with notification of the force majeure event as defendant was required to do under the

parties' contract."); *Gould Entm't Corp. v. Bodo*, 107 F.R.D. 308, 313 (S.D.N.Y. 1985)

(precluding a defendant from relying on a force majeure clause where contractual notice was not

given).

    In this case, Term 13 of each Service Contract states:

> In the event of force majeure circumstances, the Shipper or the Carrier shall notify
> the other party in writing within seven (7) working days of the existence of such
> circumstances and the effect on its ability to perform its obligations hereunder.
> Upon receipt of notice of force majeure conditions, the parties shall be excused
> from their obligations under this contract to the extent of and for the duration of
> the disability.
>
> For the purpose thereof, the term "force majeure" shall mean and include, without
> reservation or restriction, strikes, lock-outs or exceptional circumstances arising
> from the threat thereof, acts of God, state or public enemy, including but not
> limited to war, riots, civil disorder and insurrection, embargo or other disruption
> or interference with trade, restraint of Princes, marine disaster, fire, explosion, or
> other casualty. Changes in commercial conditions including, but not limited to
> changes in market or inability of Shipper to sell the goods, shall not be considered
> a force majeure circumstance.

*See* Apex Serv. Contract, Term13.

    The Defendants' reliance on Term 13 to excuse their performance under the Service

Contracts should fail for at least two reasons.  *First*, the Defendants failed to give any notice of

the alleged force majeure conditions.  As set forth above, this fact alone precludes their reliance

on Term 13 of the Service Contracts.  *Second*, even if the Defendants had given appropriate

notice pursuant to Term 13, SIPG's alleged threats to do economic harm to the Defendants do

not constitute force majeure conditions under the Service Contracts, which provide that force

majeure conditions do not include "changes in commercial conditions."  This is consistent with

New York law, under which "financial considerations . . . are not circumstances constituting a

force majeure event, and financial hardship is not grounds for avoiding performance under a

contract."  *Macalloy Corp. v. Metallurg, Inc.*, 728 N.Y.S.2d 14, 14-15 (1st Dep't 2001) (citations

omitted).

Accordingly, this Court recommends that the District Court find that the Defendants'

performance was not excused due to the existence of force majeure conditions pursuant to Term

13 of the Service Contracts.

### c.    *The District Court Should Find that the Defendants' Performance Was Excused by TCC's Termination of Its Trans-Pacific Service in April 2011*

The Defendants next argue that under the plain language of the Service Contracts, the

Plaintiff's discontinuation of its trans-Pacific service in April 2011 constituted a "termination"

within the meaning of Term 20 and excused the Defendants from any penalty or further

obligation under those contracts.  *See* Apex Serv. Contract, Term 20 ("[T]his contract may be

terminated by either party without penalty or further obligation to the other party under this

contract . . . .").  According to the Plaintiff, however, it merely "suspended" or "discontinued" its

trans-Pacific service; it did not "terminate" it.  *See* Pl.'s Fact Stmt. ¶ 35; *see also* Apr. 7, 2011

Email from V. Perez to undisclosed recipients (attached to the Singleton Declaration as Exhibit

6) (containing the subject line: "Important Announcement from The Containership Company –

*Discontinuing Transpacific Service*" (emphasis added)).

Like the Defendants, this Court construes no meaningful difference in the language used by the Plaintiff. Although TCC's notice that it was ending its trans-Pacific service did not specifically mention the word "termination," (*see* Pl.'s Mem. at 27), it did state that service would be "discontinu[ed]." Black's Law Dictionary defines "termination" as "[t]he end of something in time or existence; *conclusion or discontinuance*." Black's Law Dictionary 1700 (10th ed. 2014) (emphasis added); *see also id.* (defining "terminate" as "[t]o put an end to; to bring to an end"). The fact that TCC did not use the word "terminate" should not be dispositive of whether Term 20 applies to the cessation of its trans-Pacific service. Moreover, the Plaintiff's contention that it did not terminate its service is belied by the fact that, mere days after it notified shippers that it was suspending its trans-Pacific service, its parent company withdrew TCC's chartered vessels, leaving TCC unable to continue transporting goods in accordance with the Service Contracts even if it did not voluntarily discontinue service. *See* Defs.' Fact Stmt. ¶ 18. Based on the facts that TCC admittedly cancelled all of its remaining scheduled voyages, informed customers that its service would be "discontinu[ed]," and no longer had the vessels necessary to transport goods in accordance with the Service Contracts, the Court recommends that the District Court agree with the Defendants that TCC effectively terminated the Service Contracts as of April 8, 2011.

TCC alternatively argues that, even if the end of its trans-Pacific service constituted a termination, it was only a termination of TCC's shipping service, not of the Service Contracts themselves. *See* Pl.'s Mem. at 28. Accordingly, TCC argues that the cessation of its service was "expressly contemplated under Term 5" of the Service Contracts, which governs a modification or restructuring of TCC's service as opposed to a termination. *See id.* Even if the District Court

20

were to accept this argument, the plain language of Term 5 should still excuse the Defendants

from complying with their MQCs based on the service as modified or restructured.

As set forth above, Term 5 provides that, upon a restructuring or modification of TCC's

service, the Service Contracts "shall be maintained in force for the Origin(s) or Destination(s)

not affected by the restructuring of the services."  Apex Serv. Contract, Term 5.)  Here, TCC's

cancellation of its remaining scheduled sailings affected *all* of TCC's origins and destinations.

As a result, with respect to those ports, Term 5 provides that "the obligation of the Shipper

volume commitment *shall be reduced pro rata to the volume carried within the affected Origin

or Destination*."  *Id.* (emphasis added).  In other words, to the extent TCC's restructuring of its

services affected the ports that were subject to the Service Contracts, the restructuring effectively

reduced the Defendants' MQCs to the amount that had already been carried as of the date the

service was restructured, leaving a remaining minimum quantity commitment of zero from that

point forward.

TCC rejects this interpretation of the Service Contracts, arguing that it is a "strained" and

"unreasonable" interpretation of the language of Term 5.  *See* Pl.'s Opp'n at 12.  This is not so.

It is not at all unreasonable – and is perfectly consistent with the plain language of Term 5 – that

TCC's voluntary cessation of service to and from a particular destination would excuse the

Defendants from any further obligation to meet their MQCs with respect to that destination.  By

logical extension and pursuant to the plain language of Term 5, TCC's voluntary cessation of its

service to and from *every* destination excuses the Defendants from meeting their MQCs with

respect to *all* of those destinations.

TCC's argument that it properly accounted for the cessation of its service by crediting

each Defendant with an amount equal to what it could have shipped on the four cancelled

21

voyages is unavailing.  TCC's argument is predicated on its insistence that the Defendants were required to ship goods evenly throughout the term of the Service Contract.  *See* Pl.'s Mem. at 28-30.)  This is not so.  Pursuant to Term 5, the Defendants "agree[d] that *as far as possible*, cargo committed under [the Service Contracts] will be shipped evenly throughout the duration of the contract[s]."  Apex Serv. Contract, Term 5 (emphasis added).  There is no enforcement mechanism to compel the Defendants to ship cargo evenly, and the requirement that the Defendants do so "as far as possible" is tantamount to a requirement that the Defendants use their "best efforts."  *See Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, No. 02-CIV-376, 2008 WL 2275902, at *7 (S.D.N.Y. June 3, 2008) ("In New York, a 'best efforts' clause imposes an obligation to act with good faith in light of one's own capabilities.") (citation and internal quotation marks omitted).

The interpretation of Term 5 that it did not impose any specific, enforceable requirement that the Defendants ship their goods evenly throughout the term of the Service Contracts is further bolstered by the fact that TCC also offered potential shippers an alternative contract which expressly *required* shippers to ship goods evenly throughout the term of the contract.  For example, TCC entered into a Service Contract with HJM Int'l Corp. ("**HJM**") in which HJM expressly agreed to ship goods evenly.  *See* Defs.' Fact Stmt. ¶ 14.  Term 4 of the HJM Service Contract provides:

> Shipper agrees to ship not less than 5200 TEUs during the term of this Contract *which will be tendered to Carrier in shipments of 100 TEUs per weekly sailing . . . .*
>
> Shipper shall compensate Carrier for such weekly space allocation, whether used or unused, at contracted rates, including all applicable surcharges.

HJM Serv. Contract, Term 4.  Thus, TCC knew exactly how to structure a contract that

specifically required the shipper to ship goods evenly throughout the contract term.  The plain

language of the Service Contracts at issue in this case evidences no such specific requirement.

In the absence of evidence that the Defendants did not act in good faith in failing to ship

cargo evenly over the term of the Service Contracts – which the Plaintiff has failed to offer – the

Defendants would have been entitled to tender their entire minimum quantity commitment for

shipment on the Plaintiff's last voyage and either have their goods carried by the Plaintiff or

obtain a proportionate reduction in the minimum quantity commitment based on that tender.  *See*

Apex Serv. Contract, Term 5  ("In the event that Carrier is unable to offer space on a particular

vessel and the Shipper has given sufficient notice as specified in Term 5 of this contract, the

minimum quantity will be reduced by the quantity of cargo tendered but not carried on Carrier's

vessel.").  Thus, the Plaintiff's attempt to give the Defendants credit for what they could have

shipped on the last four voyages does not excuse the fact that the Plaintiff deprived them of the

opportunity to tender the remainder of their minimum quantity commitment on one of those

voyages, which would have resulted in the fulfillment of the commitment whether or not the

Plaintiff was able to actually ship those goods.

For these reasons, this Court recommends that the District Court find that TCC's

cessation of its trans-Pacific service in April 2011 excused the Defendants from complying with

the remainder of their MQCs under the Service Contracts.

### d.      *The District Court Should Find that the Plaintiff Did Not Breach of the Implied Covenant of Good Faith and Fair Dealing by Filing the Adversary Proceedings*

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of

contract performance."  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  The implied

covenant is breached "when a party to a contract acts in a manner that, although not expressly

forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (2d Dep't 1999).  The Defendants argue that TCC breached the implied covenant by filing the Adversary Proceedings despite having (1) promised the shippers that they "did not have to worry" about any minimum quantity commitment shortfall, (2) acknowledged that SIPG's actions prevented the Defendants from performing under the Service Contracts, (3) failed to provide adequate equipment, and (4) admitted that its service was a "disaster."  Defs.' Mem. at 30.  The District Court should not accept this argument.

In New York, the implied covenant of good faith and fair dealing "can only impose an obligation consistent with other mutually agreed upon terms in the contract." *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 732 (S.D.N.Y. 1993); *see also M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) ("Integral to finding a breach of the implied covenant is a party's action that *directly violates an obligation that may be presumed to have been intended by the parties*.") (emphasis added).  Here, the Defendants are asking the Court to imply a covenant that the Plaintiff not sue them on account of a MQC shortfall, even though such a recovery is expressly contemplated by the Service Contracts.  In essence, the Defendants are asking the Court to imply a covenant that would directly contradict the parties' agreement as embodied in the Service Contracts.  This cannot be done.  *See Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 250 (S.D.N.Y. 2002) ("While the implied covenant may be used to protect a legitimate, mutually-contemplated benefit of the contract, a party may not invoke this covenant to have the court create an additional benefit for which the parties did not bargain.") (citation, alteration, and internal quotation marks omitted); *Ferguson v. Lion Holding, Inc.*, 478

24

F. Supp. 2d 455, 479 (S.D.N.Y. 2007) ("[T]he implied covenant of good faith and fair dealing is

not designed to enlarge or create new substantive rights between parties.") (citation omitted).

Accordingly, the Court recommends that the District Court finds that the filing of the

Adversary Proceedings to collect the MQC shortfalls did not violate the implied covenant of

good faith and fair dealing in the Service Contracts.

**e.**   ***The District Court Should Find that Genuine Issues of Material Fact Preclude Summary Judgment on the Defendants' Remaining Arguments***

**i.**   ***Fraudulent Inducement***

To prove common law fraud under New York law, including fraud in the inducement, a

party must show: (1) a false representation of material fact, (2) intent to defraud, (3) reasonable

reliance, and (4) damages. *See In re WorldCom, Inc.*, 374 B.R. 94, 106 (Bankr. S.D.N.Y. 2007)

(citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146,

153 (2d Cir. 1995) (additional citations omitted)).   "To prove fraudulent concealment . . . , the

plaintiff must prove, in addition to all of the elements of common law fraud, that the defendant

had a duty to disclose the material information.   *Id.*   On the duty to disclose, the Second Circuit

has stated that:

> New York recognizes a duty by a party to a business transaction to speak in three
> situations: first, where the party has made a partial or ambiguous statement, on the
> theory that once a party has undertaken to mention a relevant fact to the other
> party it cannot give only half of the truth; second, when the parties stand in a
> fiduciary or confidential relationship with each other, and third, where one party
> possesses superior knowledge, not readily available to the other, and knows that
> the other is acting on the basis of mistaken knowledge.

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citations and internal quotation

marks omitted).

Here, the Defendants argue that TCC had a duty to disclose SIPG's threats based on its

superior knowledge, sometimes referred to as the "special facts doctrine." *See WorldCom*, 374

25

B.R. at 107 ("[U]nder the 'special facts doctrine,' a duty to disclose arises where one party's

superior knowledge of essential facts makes the transaction without disclosure inherently

unfair."). According to the Defendants:

> [B]efore TCC entered into any of the Service Contracts at issue, it was expressly
> informed not only that SIPG would not tolerate it operating out of Taicang, which
> SIPG viewed as a rival port, but that it would prevent [shippers] from booking
> and shipping with TCC . . . . Despite the importance of this information to its
> customers, and despite the fact that SIPG began carrying out its threats even
> before the vast majority of the Service Contracts were executed, TCC failed to
> disclose this information to its customers.

Defs.' Mem. at 27-28.

Unsurprisingly, the Plaintiff disputes the Defendants' characterization of its knowledge

regarding SIPG's threats. According to the Plaintiff, its representatives met with SIPG in March

2010. At that time, SIPG threatened TCC – not any of its shippers – by threatening to "prevent

TCC from operating its vessels north up the Yangtze River past Shanghai, prevent TCC from

working with local agents, and prevent any bookings on TCC vessels." Pl.'s Opp'n at 24-25.

However, SIPG allegedly "said nothing about interfering with TCC's customers who were doing

business in Shanghai." *Id.* at 25. The Plaintiff contends that, after the meeting, it received

assurances from the government of Taicang and the President of SIPG that SIPG would not

interfere with its operations. *See id.* at 25-26, 28-29. Based on the Plaintiff's version of the

facts, the Plaintiff contends that it had nothing to disclose:

> [A]s of April 1, 2010, when TCC was soliciting customers for its service, TCC
> had no basis to believe that SIPG would create problems for it. More importantly,
> TCC had no basis at this time to believe that SIPG was threatening to interfere
> with TCC's customers' business in Shanghai – which is the exact information that
> Defendants now claim TCC should have disclosed to them. TCC obviously
> cannot disclose what it does not know.

*Id.* at 29.

26

The District Court should not resolve these disputed issues of fact at the summary

judgment stage. *See Saltz v. City of New York*, 126 F. Supp. 2d 657, 659 (S.D.N.Y. 2000) ("The

role of the court on a motion for summary judgment is not to try issues of fact but only to

determine whether there are issues of fact to be tried."); *Cioffi v. Averill Park Cent. School Dist.*

*Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (at the summary judgment stage, courts "are not

to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial") (citation and internal quotation marks omitted).  As a result, this Court

recommends that the District Court not grant summary judgment for either party with respect to

the Defendants' argument that TCC fraudulently concealed information regarding SIPG's

threats.

### ii.    *TCC's Alleged Breaches of the Service Contracts*

"Under New York law, a party's performance under a contract is excused where the other

party has substantially failed to perform its side of the bargain or, synonymously, where that

party has committed a material breach."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500

F.3d 171, 186 (2d Cir. 2007).  "[F]or a breach of contract to be material, it must go to the root of

the agreement between the parties."  *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d

284, 289 (2d Cir. 1997) (citation and internal quotation marks omitted).  "A party's obligation to

perform under a contract is only excused where the other party's breach of the contract is so

substantial that it defeats the object of the parties in making the contract."  *Id.*  New York courts

consider five factors in determining whether a breach is material:

> [1] the ratio of the performance already rendered to that unperformed, [2] the
> quantitative character of the default, [3] the degree to which the purpose behind
> the contract has been frustrated, [4] the willfulness of the default, and [5] the
> extent to which the aggrieved party has already received the substantial benefit of
> the promised performance.

27

*Hadden v. Consol. Edison Co. of N.Y., Inc.*, 34 N.Y.2d 88, 96 (1974).

According to the Defendants, TCC's trans-Pacific service was marred by a series of issues, including TCC's lack of adequate cargo containers for the Defendants' goods, (*see* Defs.' Mem. at 33-34); TCC's schedule delays and unreliable service, (*see id.* at 34-35); and TCC's voluntary cancellation of its scheduled sailings, (*see id.* at 35-36).  The Defendants argue that TCC lacked adequate cargo containers for at least three months during the term of the Service Contracts, had a "disast[rous]" reliability record, and voluntarily cancelled at least eight of its voyages.  *Id.* at 36.  While not necessarily disputing that these issues occurred to some degree, the Plaintiff disputes that they rose to the level of a material breach.  For example, the Plaintiff argues that the shortage of cargo containers did not impact most of the Defendants and did not occur during the busy trans-Pacific shipping season.  *See* Pl.'s Opp'n at 50-51.  As to the alleged scheduling delays, the Plaintiff argues that such delays are accepted as inevitable in the maritime shipping industry, that its reliability in arriving at destinations on time (rather than departing on time) was good and was similar to its competitors, and that the majority of its shipments were not time sensitive.  *See id.* at 49-50.  And as to its cancellations, the Plaintiff argues that it properly credited the Defendants with adjustments to their MQCs where such cancellations warranted such adjustments.  *See id.* at 51-53.

As with the Defendants' fraudulent inducement arguments, the District Court should not resolve these disputed issues of fact between the parties regarding TCC's alleged breaches of the Service Contracts on a motion for summary judgment.  *See Saltz*, 126 F. Supp. 2d at 659; *Cioffi*, 444 F.3d at 162.  This is especially true since "[t]he issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the

28

inferences are certain." *Merrill Lynch*, 500 F.3d at 186.  Accordingly, this Court recommends that the District Court deny summary judgment on this issue.

### *Conclusion*

For the foregoing reasons, this Court recommends that the District Court find that the Defendants were relieved of their contractual MQCs by the Plaintiff's voluntary cessation of its trans-Pacific service in April 2011.  Accordingly, this Court recommends to the District Court that the Defendants' Omnibus Motion should be **GRANTED** and the Plaintiff's Omnibus Motion should be **DENIED**.

The Court directs that in accordance with Bankruptcy Rule 9033(c), and such other or additional rules as may be applicable, the Clerk shall serve forthwith copies of these Proposed Findings of Fact and Conclusions of Law on all parties by mail and note the date of mailing on the docket.  Within 14 days after being served with a copy, a party may serve and file with the Clerk written objections that identify the specific proposed findings and conclusions objected to and state the grounds for such objections.  A party may respond to another party's objections within 14 days after being served with a copy thereof.

Dated: April 28, 2016
      New York, New York
                                         /s/ *James L. Garrity, Jr.*
                                       United States Bankruptcy Judge